IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:14-CR-284-FL

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| ROGER ALVESTER GEDDIE, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court in furtherance of oral rulings made on defendant's objection to his classification as an armed career criminal, pursuant to the Armed Career Criminal Act of 1984 ("ACCA"), at time of sentencing, held August 11, 2015. More expansive basis for the court's decision to sustain defendant's objection is memorialized herein.

**BACKGROUND**

On February 12, 2015, without benefit of a written plea agreement, defendant pleaded guilty to a one count indictment wherein he was charged with possession of a firearm and ammunition by a convicted felon, a violation of 18 U.S.C. §§ 922(g)(1) & 924. The United States Probation Office calculated defendant's criminal history category to be a V and total offense conduct level to be a 30. Based on those calculations, the advisory Sentencing Guidelines recommended a sentence of 151-188 months.

In the usual case, defendant's sentence would have been statutorily capped at 120 months, the advice of the Guidelines notwithstanding. See 18 U.S.C. § 924(a)(2). However, defendant previously had been convicted of what the government contended were three violent felonies as that term is defined by the ACCA. The ACCA requires imposition of a mandatory minimum 15 year

prison term for persons convicted of unlawful possession of a firearm under 18 U.S.C. 922(g), who have three prior state and/or federal convictions for violent felonies. 18 U.S.C. § 924(e)(1).[1] "Violent felony" means any crime punishable by imprisonment for a term exceeding one year that has as an element the use, attempted use, or threatened use of physical force against the person of another. 18 U.S.C. § 924(e)(2)(B)(i).

## DISCUSSION

Defendant, age 48, has had multiple contacts with the criminal justice system, as described in the pre-sentence report ("PSR"), beginning at the age of 16. The PSR illuminates a rapidly escalating trend of criminal activity with commentary that four qualifying predicate convictions for violent felonies appear on his record. Defendant effectively concedes that he has two ACCA predicate convictions. The case devolves around import of conviction for assault with a deadly weapon inflicting serious injury ("AWDWISI"), in violation of N.C. Gen. Stat. § 14-32(b). Defendant argues that neither of the two convictions appearing on his record for AWDWISI may serve as the critical third predicate conviction, because these are not "violent felonies" for purposes of the ACCA.

Defendant relies upon this court's decision in United States v. Jones, No. 4:15-CR-5, 2015 WL 4133747 (E.D.N.C. July 8, 2015). In rejoinder, the government contends that N.C. Gen. Stat. § 14-32(b) is divisible in light of United States v. Vinson, __ F.3d __, 2015 WL 4430889 (4th Cir. 2015), an argument not previously raised before this court and well deserving of scrutiny.

---

[1] 18 U.S.C. § 922(g)(1) makes it unlawful for any person who has been convicted of a crime punishable by a prison term exceeding one year to possess in or affecting interstate commerce any firearm or ammunition. 18 U.S.C. § 924 provides associated penalties.

A.    Violent Felony

The ACCA's violent felony language follows closely the language of the advisory Guidelines' "career offender enhancement," which is triggered where defendant "has at least two prior felony convictions of either a crime of violence or controlled substance offense." U.S.S.G. § 4B1.1(a). In pertinent part, "crime of violence" is defined in the same manner as "violent felony," "any offense under federal or state law . . . [that] has as an element the use, attempted use, or threatened use of physical force against the person of another." Compare U.S.S.G. § 4B1.2(a)(1) with 18 U.S.C. § 924(e)(2)(B). In fact, the language of the two statutes is so similar that the Fourth Circuit has instructed courts to "rely upon precedents evaluating whether an offense constitutes a violent felony under the [ACCA] interchangeably with precedents evaluating whether an offense constitutes a crime of violence under U.S.S.G. § 4B1.2(a)." United States v. Clay, 627 F.3d 959, 965 (4th Cir. 2010).

B.    Divisibility

This court previously decided that AWDWISI is not a "crime of violence" under the advisory Guidelines, which suggests the appropriate outcome in this case. United States v. Jones, No. 5:15-CR-5-FL, 2015 WL 4133747 (E.D.N.C. July 8, 2015) ("Jones (E.D.N.C.)"). In Jones (E.D.N.C.), as in every case, the court approached the issue categorically, looking "only to the fact of conviction and to the statutory definition of the prior offense." United States v. Montes-Flores, 736 F.3d 357, 364 (4th Cir. 2013) (citing Taylor v. United States, 495 U.S. 575, 602 (1990)).

The government contends in this instance for the first time that N.C. Gen. Stat. § 14-32(b) is divisible and asks the court to apply a "modified categorical" analysis to the statute. A modification to the "categorical approach" is required when a statute is "divisible." See Descamps

3

v. United States, 133 S. Ct. 2276, 2283-84 (2013); Vinson, 2015 WL 4430889, at *2. When the statute of conviction for the underlying crime "consists of multiple, alternative elements creating several different crimes, some of which would match the generic federal offense and others that would not" then the court may examine a limited universe of documents to determine whether the defendant was convicted for committing the underlying crime in a manner that categorically qualifies as a violent felony. See Vinson, 2015 WL 4430889, at *2. As such, the "modified categorical approach" is not a deviation from the categorical approach but a "tool for implementing the categorical approach." Descamps, 133 S. Ct. at 2284.

The government contends that the statute is divisible in two respects. First, the government contends the statute is divisible in light of Vinson's determination that the term "assault" is divisible, and that one of the constituent crimes comprising "assault" categorically can be a "misdemeanor crime of domestic violence" under a similar statute. See Vinson, 2015 WL 4430889, at *5-6. Second, the government argues that the statue is divisible because it criminalizes a broad spectrum of culpable conduct, including conduct that either is purposeful or is criminally negligent. See State v. Jones, 353 N.C. 159, 164-65 (2000) ("Jones (N.C.)"). For the reasons that follow, the court finds that the statute is not divisible.

1. United States v. Vinson

Turning first to the government's contention that the statute is divisible along its "assault" element, the court is not persuaded. To obtain a conviction for AWDWISI the state must demonstrate 1) an assault, 2) with a deadly weapon, 3) inflicting serious injury, 4) not resulting in death. Jones (N.C.), 353 N.C. at 164. The government would have the court carve the element of

4

assault into three constituent crimes, as the Fourth Circuit did in Vinson. However, this statute is not susceptible to the same divisibility analysis as the statute before the court in Vinson.

In that case, the government charged defendant with possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g)(9). Vinson, 2015 WL 4430889, at *1. The government contended that the defendant was a prohibited person because he had "been convicted . . . of a misdemeanor crime of domestic violence." Id. See generally 18 U.S.C. § 922(g)(9). "Misdemeanor crime of domestic violence," ("MCDV"), is a term of art defined, as relevant here, as any crime that "has, as an element, the use or attempted use of physical force . . . committed by a current or former spouse." 18 U.S.C. § 921(a)(33)(A). In Vinson the government argued that the defendant had been convicted of a MCDV because he had been convicted of a violation of N.C. Gen. Stat. § 14-33, which provides in pertinent part "any person who commits any assault . . . is guilty of a Class A1 misdemeanor if, in the course of the assault, assault and battery, or affray, he or she . . . [a]ssaults a female, he being a male person at least 18 years of age N.C. Gen. Stat.§ 14-33(c)(2); see also Vinson, 2015 WL 4430889, at *5-6. The district court dismissed the indictment, concluding the offense did not categorically qualify as a misdemeanor crime of violence. Vinson, 2015 WL 4430889, at *1; see also United States v. Vinson, No. 5:13-CR-121-FL, 2013 WL 6843013 (E.D.N.C. Dec. 27, 2013).

The Fourth Circuit reversed, and held that the term "assault," as used in N.C. Gen. Stat. § 14-33(c)(2) was divisible into three constituent crimes: 1) assault by a show of force causing reasonable apprehension in the victim; 2) assault by an attempted battery; and 3) assault by a completed battery. See Vinson, 2015 WL 4430889, at *5-6. The court reasoned that these were separate crimes and held that the crime of assault by a completed battery qualified as a misdemeanor

5

crime of domestic violence in light of the Supreme Court's decision in <u>United States v. Castleman</u>, __ U.S. __, 134 S. Ct. 1405, 1413 (2014). <u>Vinson</u>, 2015 WL 4430889, at *1.[2]

Strictly speaking, the nature of N.C. Gen. Stat. § 14-32(b) and its attendant elements foreclose on the government's divisiblity argument. Assault with a deadly weapon inflicting serious injury, as the title implies, actually contemplates a completed battery that inflicts serious injury short of death. <u>See</u> <u>Jones (N.C.)</u>, 353 N.C. at 164-65. Thus, the statute technically cannot be divisible despite its explicit "assault" element.

Regardless of semantics, the import of the government's argument is clear. The government contends that because AWDWISI actually is a battery and because <u>Vinson</u> held that a battery categorically qualifies as a MCDV under 18 U.S.C. § 921(a)(33)(A)'s "use of force" clause, it naturally must follow that AWDWISI categorically qualifies as a "violent felony" under the ACCA's own "use of force" clause. <u>See</u> 18 U.S.C. § 924(e)(2)(B).

Despite the alluring simplicity of the government's position, it oversimplifies the analysis required in an area of the law that demands the suspension of common sense. <u>See</u> <u>United States v. Parral-Dominguez</u>, __ F.3d __, 2015 WL 4479530, at *5 (4th Cir. 2015) ("[Common sense] would serve only as [a] distraction[] from the discrete narrow assessment of a crime's underlying elements, as mandated by the Supreme Court."). AWDWISI is not a "violent felony," because the government's analogy – comparing the ACCA's violent felony by "use of force" provision, <u>see</u> 18 U.S.C. § 924(e)(2)(B), to the MCDV statute's own "use of force" provision, <u>See</u> 18 U.S.C. § 921(a)(33)(A) – ignores structural differences making precedents interpreting the MCDV statute incompatible with the ACCA.

---

[2] In <u>Castleman</u>, the Court held that "physical force," as that term is used in 18 U.S.C. § 921(a)(33)(A), meant "the degree of force that supports a common law battery conviction."

6

Case 5:14-cr-00284-FL   Document 42   Filed 08/27/15   Page 6 of 14

In Vinson the Fourth Circuit necessarily concluded that the MCDV statute's "use of force" provision did not demand that the predicate offense have a mens rea requirement beyond general awareness. See Vinson, 2015 WL 4430889, at *4; Pet. for Reh'g *En Banc*, United States v. Vinson, No. 14-4078, DE 39, at *6-9 (4th Cir. Aug. 11, 2015). On its face, this holding seems to conflict with other authority addressing the "use of force" provision found in both the ACCA and elsewhere in the advisory Sentencing Guidelines, which either hold or strongly suggest that the "use of force" provision only may be triggered where the force at issue was "used" at least recklessly. See Leocal v. Ashcroft, 543 U.S. 1, 9-10 (2004); United States v. McMurray, 653 F.3d 367, 374-75 (6th Cir. 2011) (holding Tennessee manslaughter statute was not a "violent felony" under ACCA because it could be committed recklessly); United States v. Zuniga-Soto, 527 F.3d 1110, 1123-25 (10th Cir. 2008) (noting U.S.S.G. § 2L1.2 & 18 U.S.C. § 16(a) require more than recklessness and collecting cases); Bejarano-Urrutia v. Gonzales, 413 F.3d 444, 446-47 (4th Cir. 2005) (noting that a crime is not a "crime of violence" unless force is "used" "as a means to an end."); Jones (E.D.N.C.), 2015 WL 4133747, at *2-3.

However, the inapplicability of the Fourth Circuit's conclusion to the case at bar is easily explained in light of the statutes' differing structures. The MCDV statute considered in Vinson, by its very title, addresses misdemeanor crimes of domestic violence. The crimes at issue legislatively have been determined to be less severe than those under consideration when the violent felony provision of the ACCA is triggered. It follows that, when the court analyzes a particular crime to determine whether it categorically can be called a "violent felony," the crime at issue should categorically demand something more than general awareness.

7

The Supreme Court recognized these structural differences in Castleman, the case relied on by the Fourth Circuit in its Vinson opinion. The Court made three observations critical to the analysis at hand, that suggest the Fourth Circuit's implicit holding that N.C. Gen. Stat. § 14-33(c)(2) requires a sufficiently culpable mental state as to trigger application of the "use of force" cause is inapplicable in this case. First, the Court noted that Congress likely intended to categorically qualify state-law assault and battery convictions as MCDVs, and contrasted the low threshold required to trigger application of the MCDV statute's "use of force" clause with the ACCA's own version of that clause. See Castleman, 134 S. Ct. at 1411. Specifically, the Court found that the MCDV statute implied only the common law definition of "force," while the ACCA explicitly required violent force. Id. (emphasis added). Second, the Court noted that "'violent' or 'violence' standing alone 'connotes a substantial degree of force,'" but that "domestic violence" typically is understood to include only "[m]inor uses of force". Id. at 1411-12. Finally, the Court expressly stated that the term "violent felony" used in the context of the ACCA evokes a certain type of crime "typically committed by those whom one normally labels as 'armed career criminals,'" as opposed to "domestic abusers convicted of generic assault or battery offenses." Id. In view of the established differences between the ACCA and MCDV statute, it would be unreasonable to apply precedent addressing the MCDV statute's "use of force" clause interchangeably with the ACCA's own "use of force" clause.

Accordingly, the court declines to accept the government's analogy of the case at bar to Vinson. Although AWDWISI categorically requires a completed battery, as was addressed in Vinson, the statute at issue there allowed a more liberal application of the "use of force" clause than is permissible under the ACCA. Thus, as the court explained in Jones (E.D.N.C.), and as is

8

expanded upon below, because the state may obtain an AWDWISI conviction by a showing of criminally negligent acts, AWDWISI is not a "violent felony" that supports application of the ACCA.

2. Mens Rea

The government also argues that AWDWISI is divisible because the state may obtain a conviction upon a showing of either purposeful conduct or criminal negligence. In essence, the government suggests the statute may be carved up by degree of culpability. By contrast, defendant argues that degree of culpability is not a material consideration in the context of N.C. Gen. Stat. §14-32(b), because the statute itself only requires the state to prove the defendant was generally aware of his acts at the time he committed the offense. The court agrees with defendant. The government's argument misses the mark because it fails to account for the nature of "intent" under North Carolina law.

"A crime is divisible under Descamps only if it is defined to include multiple alternative elements (thus creating multiple versions of a crime), as opposed to multiple alternative means (of committing the same crime)." Vinson, 2015 WL 3340889, at *5 (alterations omitted); see also Omargharib v. Holder, 775 F.3d 192, 197 (4th Cir. 2014). "Elements, as distinguished from means, are factual circumstances of the offense the jury must find unanimously and beyond a reasonable doubt." Omargharib, 775 F.3d at 197. In analyzing the distinction, the court is to consider how North Carolina courts typically instruct the jury as to AWDWISI. Id.

It is generally accepted that a crime may be divisible where it allows the state to obtain a conviction by showing one of several various degrees of culpability. See United States v. Carter, 752 F.3d 8, 17-18 (1st Cir. 2014); United States v. Marrero, 743 F.3d 389, 396 (3d Cir. 2014);

9

United States v. Espinoza, 733 F.3d 568, 571 (5th Cir. 2013); United States v. Johnson, 675 F.3d 1013, 1017–18 (6th Cir.2012) (examining indictment and jury instructions to establish whether defendant was charged and convicted of purposeful or reckless conduct); United States v. Ossana, 638 F.3d 895, 903 (8th Cir.2011); United States v. Clinton, 591 F.3d 968, 973 (7th Cir.2010). Usually, where a statute is found to be divisible by varying degree of culpability, the statute criminalizes "intentional, knowing, reckless, or negligent" conduct, or some variant thereof. See 18 Pa. Cons. Stat. § 2701 (discussed in Marrero, 743 F.3d at 396); Tex. Penal Code § 22.01 (discussed in Espinoza, 773 F.3d at 571); Mo. Rev. Stat. § 565.070 (discussed in Johnson, 675 F.3d at 1017-18); Ariz. Rev. Stat. §§ 13-1203 & -1204 (discussed in Ossana, 638 F.3d at 903); Ind. Code § 35-42-2-2(b)(1) (discussed in Clinton, 591 F.3d at 973). Such statutes, allow the jury to find that the defendant intentionally, purposefully, knowingly, or recklessly committed a criminal act against another person.

By contrast, the statute at issue only requires a showing of "intent" to commit the guilty act, not a specific level of culpability with regard to defendant's conduct as directed toward another. See State v. Pierce, 346 N.C. 471, 494 (1997) (defining "general intent" crime); see also Jones (N.C.), 353 N.C. 164-65 (not listing "intent" as an element of AWDWISI); State v. Woods, 126 N.C. App. 581, 586-87 (1997) (stating AWDWISI is a general intent crime); State v. Curie, 19 N.C. App. 17, 20 (1973) (same). Indeed, this reading is confirmed by North Carolina's pattern jury instructions. See N.C. Pattern Jury Instructions – Criminal § 208.15 (requiring the jury find "that the defendant assaulted the victim by intentionally [committing the assault]" as opposed to "intentionally assaulting the victim" by performing a certain act). Thus, the "intent" element of AWDWISI may be satisfied by variously showing a wide range of conduct spanning from

10

purposeful to criminally negligent. See Jones (N.C.), 353 N.C. at 164-65. However, the jury is never asked to make a finding as to what particular level of conduct satisfies the general "intent" requirement, only that the defendant "intended" to undertake the guilty act.

Although the nature of AWDWISI allows the state to obtain a conviction of varying degrees of culpability, because the jury is asked only to find that the defendant generally "intended" the conduct at issue, the culpability attached to the commission of the act merely constitutes the "means" of committing the crime, not the elements of the crime. Omargharib, 775 F.3d at 197 ("Elements, as distinguished from means, are factual circumstances of the offense the jury must find unanimously and beyond a reasonable doubt."). Viewed in light of the statute's general intent requirement, the varying degrees of culpability which satisfy that requirement hardly can be called "different types of behavior . . . [that] constitute . . . two separate crimes." United States v. Rivers, 595 F.3d 558, 562-63 (4th Cir. 2010) (emphasis added).

"Only Congress can rescue the federal courts from the mire into which [the] ACCA's draftsmanship and Taylor's 'categorical approach' have pushed us." Chambers v. United States, 555 U.S. 122, 132 (2009) (Alito, J., concurring). The distinction between means and elements borders on what can only be termed a judicial morass grounded in "ever-morphing analysis" and "blurred articulation of applicable standards." See Omargharib, 775 F.3d at 201-02 (Niemeyer, J., concurring). Indeed, the case law has developed tests that value form over substance and rely almost exclusively on technical line-drawing, separating the ACCA predicate felonies from other felonies based on words often though of as synonymous in common vernacular. See id. (discussing impact of "wrongful" versus "fraudulent" on an ACCA analysis). Nevertheless, this court is obliged to follow the controlling law of this circuit. Thus, in this case general intent to commit the crime is the

11

"element," which may be committed by various means, ranging from "criminally negligent" to purposeful. The government's divisibility argument is without merit.

C.      AWDWISI is not a "Violent Felony"

Having concluded that N.C. Gen. Stat. § 14-32(b) is not divisible, the only question that remains is whether all violations of § 14-32(b) qualify as "violent felonies" under the relevant definition. See Begay v. United States, 553 U.S. 137, 141 (2008) ("In determining whether [a] crime is a violent felony, we consider the offense generically, that is to say, we examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion."); Montes-Flores, 736 F.3d at 364.

Here, as in Jones (E.D.N.C.), the "use of force" requirement is at issue. The Supreme Court previously has instructed that the "use" of force against another requires "a higher degree of intent than negligent or merely accidental conduct." Leocal, 543 U.S. at 9-10. Indeed, the Court suggested that "use of force" clause applies only where the predicate offense was recklessly directed toward another. See id. at 13. The Fourth Circuit also has suggested that the "use" of force connotes something more than simple, or even criminal negligence. See Bejarano-Urrutia, 413 F.3d at 446-47 (noting that a crime is not a "crime of violence" unless force is "used" "as a means to an end."). With these principles in mind, the court now turns to the crime of AWDWISI, as that crime is defined by the State of North Carolina.

In analyzing the statute at issue, the court may look to the statutory language and the relevant interpretation of that language by the North Carolina Supreme Court. See United States v. Mungro, 754 F.3d 267, 270 (4th Cir. 2014). The statute criminalizing AWDWISI states that "[a]ny person who assaults another person with a deadly weapon and inflicts serious injury shall be punished as

12

a . . . felon." N.C. Gen. Stat. § 14-32(b). To obtain a conviction for AWDWISI the state must demonstrate 1) an assault, 2) with a deadly weapon, 3) inflicting serious injury, 4) not resulting in death. Jones (N.C.), 353 N.C. at 164.

The state may obtain am AWDWISI conviction upon a showing a "culpable or criminal negligence," which includes "such recklessness or carelessness, proximately resulting in injury or death, as imports a thoughtless disregard of consequences or a heedless indifference to the safety and rights of others." Id. Because the state may obtain a conviction upon a showing of "a thoughtless disregard of consequences," AWDWISI cannot categorically be a "violent felony." As noted above, a "violent felony" involving the "use of force" must be done with, at an irreducible minimum, a reckless state of mind. See Bejarano-Urrutia, 413 F.3d at 446-47. "Recklessness" must be given its "generic definition." See Taylor v. United States, 495 U.S. 575, 598 (1990); United States v. Peterson, 629 F.3d 432, 436 (4th Cir. 2011). So defined, a "reckless" state of mind requires a "conscious disregard of a substantial and unjustifiable risk that the material element will result from the conduct." See Peterson, 629 F.3d at 436 (citing Model Penal Code § 2.02(2)(c)) (alterations omitted).

However slight, the distinction between a thoughtless and conscious disregard is a material one. See id. at 437. ("'Thoughtless disregard' . . . is less than 'conscious disregard,' which is the definition of recklessness."). Thus, because the state may obtain an AWDWISI conviction upon a showing of a mental state less than recklessness, AWDWISI categorically is not a "violent felony," regardless of how violent defendant's own conduct may have been.

In any case, the court perceives now an additional ground in support of its Jones (E.D.N.C.) holding. For a predicate crime to qualify as a "violent felony," under the "use of force" clause, the

13

jury must find that the use of force be directed "against the person of another." 18 U.S.C. § 924(e)(2)(B); Leocal, 543 U.S. at 9-10 ; Bejarano-Urrutia, 413 F.3d at 446-47; Jobson v. Ashcroft, 326 F.3d 367, 373 (2d Cir. 2003). By contrast, the crime of AWDWISI requires only that the defendant have "intended" to use the force, not that the force be intentionally applied to another. Thus, in effect, the "use of force" clause only may apply where the underlying crime requires the jury to find the "force" in question was "used" culpably against another. Jones (N.C.), 353 N.C. 164-65; N.C. Patter Jury Instructions – Criminal § 208.15 (requiring the jury find "that the defendant assaulted the victim by intentionally [committing the assault" as opposed to "intentionally assaulting the victim" by performing a certain act).

In sum, and with all due respect for the government's position, the court's sojourn through these murky legal waters has led it to the conclusion that defendant's objection must be sustained.

## CONCLUSION

Based on the foregoing, defendant's objection to his classification as an armed career criminal under the ACCA is SUSTAINED.

SO ORDERED, this the 27th day of August, 2015.

_____
LOUISE W. FLANAGAN
United States District Judge